Joseph Kistler (3458)
*jkistler@hutchlegal.com*
Todd W. Prall (9154)
*tprall@hutchlegal.com*
HUTCHISON & STEFEN, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Dirk O. Julander, Bar No. 132313
*doj@jbblaw.com*
(Pro Hac Vice Application Pending)
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone: (949) 477-2100
Facsimile: (949) 477-6355

*Attorneys for Plaintiff, Atlantic-Pacific Processing Systems, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ATLANTIC-PACIFIC PROCESSING SYSTEMS, INC., a Nevada corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DERMAKTIVE, LLC, a Florida limited liability company, and JORDAN DUFNER, a Connecticut resident; DOE INDIVIDUALS I through X; and ROE ENTITIES I through X, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR BREACH OF CONTRACT, BREACH OF GUARANTY AND DECLARATORY RELIEF** <br><br> **(Jury Demand)** |

Plaintiff, ATLANTIC-PACIFIC PROCESSING SYSTEMS, INC., a Nevada Corporation (hereinafter "Plaintiff" or "APPS") hereby alleges for its complaint against Defendants DERMAKTIVE, LLC, and JORDAN DUFNER (herein collectively "Defendants") as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. Section 1332(a)(l) on the basis of diversity of citizenship, because the amount in controversy exceeds $75,000.00, the parties are citizens of different states, and there is an actual controversy between the parties.

2. Venue in the District of Nevada is proper under 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

## PARTIES

3. Plaintiff is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Nevada with its principal place of business located in Clark County, Nevada.

4. Plaintiff is informed and believes and, based thereon, alleges that Defendant, DERMAKTIVE, LLC ("Dermaktive"), at all relevant times was a limited liability company duly organized and existing under and by virtue of the laws of the State of Florida, with its principal place of business in Aventura, Florida.

5. Plaintiff is informed and believes, and based thereon, alleges that Defendant JORDAN DUFNER ("Dufner"), is an individual who at all relevant times was residing in Danbury, Connecticut.

6. Plaintiff is informed and believes, and based thereon alleges, that there exists, and at all relevant times there existed, a unity of interest and ownership between and among the individual defendant Dufner and the corporate defendant Dermaktive such that any individuality and separateness between and among the Dufner and Dermaktive have ceased and Dermaktive is the alter ego of Dufner in that Dermaktive is, and at all relevant times was, used by Dufner as a device to avoid individual liability; Dufner has completely controlled, dominated, managed, and operated Dermaktive for his own benefit and gain; and Dufner has intermingled Dermaktive's assets with his individual assets to suit his own convenience.

7. Plaintiffs do not know the true names and characters of Doe Individuals I through X and Roe Entities I through X, whether individual, corporate, associate or otherwise, and

Plaintiffs therefore sue these defendants by fictitious names. Plaintiffs are informed and believe and therefore allege that each of the defendants designated as Doe Individuals I through X or Roe Entities I through X is responsible in some manner for the events and happenings this complaint describes, and Plaintiffs will ask leave of this court to amend this complaint to insert the true names and characters of Doe Individuals I through X and Roe Entities I through X when they learn of them and to join these defendants in this action.

## FACTUAL BACKGROUND

8. T1 Payments, LLC ("T1") is a sub-ISO accredited by and under contract with APPS to process credit card transactions with the card brands under APPS's banking relationship. Under its agreement with APPS, T1 presents merchants to APPS for credit card processing using APPS' processing system. The agreement with APPS allowed T1 to market credit card processing services to merchants in its own name.

9. On or about April 9, 2014, Dermaktive and T1 entered into a written Merchant Application and Agreement (the "Agreement"). As part of the Agreement, T1 would provide credit card processing services for Dermaktive, as a merchant, for a term of 36 months. In exchange, T1 would receive specified fees.

10. The Agreement contained the following provision: "The undersigned has received, read, and understood, the Merchant Agreement, which is incorporated herein by this reference, and agrees on behalf of the Merchant to be bound by the terms of such Merchant Agreement as may be amended from time-to-time." Dermaktive received the Merchant Agreement and was aware of the incorporated terms and conditions.

11. The terms and conditions of the Agreement limited the "chargebacks" Dermaktive could incur. A chargeback is a credit card transaction that is returned by the issuer of the credit card. If chargebacks amounted to more than 1% of the total number of transactions in a 30-day period, then Dermaktive would be required to fund a Merchant Reserve Account to protect the other parties from liability.

12. T1 was also allowed to terminate the Agreement if: "At any time during the term of this Agreement, Merchant has had a monthly ratio of Chargebacks to total transactions

3

exceeding Card Association requirements or 1%, or Chargebacks exceed 3% of any monthly dollar amount of total transactions."

13. In the event of termination, the parties agreed T1 could charge an early termination fee ("ETF"). In the case of a "high risk" merchant, the ETF would be equal to "the average monthly processing fees charged to Merchant for the previous 12 months... multiplied by the number of months remaining under the Agreement."

14. On or about October 24, 2014, Dermaktive entered into a Reserve Addendum to the Agreement directly with APPS. The Reserve Addendum allowed APPS to create a reserve account. Therein, Dermaktive also acknowledged that it was a "High Risk Merchant."

15. After only a short time of providing processing services, T1 and APPS observed that there were more chargebacks than allowed under the Agreement. APPS is informed and believes and on that basis alleges that excessive chargebacks arose because Dermaktive's business turned out to be set up to defraud consumers through its sales and advertising practices.

16. Because Dermaktive's chargebacks continued to be unacceptably high and to protect consumers from fraudulent practices, T1 terminated the Agreement effective December 31, 2014. In accordance with the Agreement, T1 calculated that the ETF was $867,135.42. APPS, on behalf of T1, collected $336,198.16 of the ETF from the reserve account.

17. Despite its express obligation under the Agreement, Dermaktive has failed to pay the $530,937.26 balance of the ETF.

18. Dufner personally guaranteed Dermaktive's performance of all terms and conditions of the Agreement, including the payment of the ETF (the "Guaranty").

19. T1 thereafter transferred and assigned to APPS any and all of its right, title, interest and claims to the ETF arising under and in connection with the Agreement with Dermaktive.

**FIRST CAUSE OF ACTION**

**(Breach of Contract against All Defendants)**

20. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 19 as though set forth fully herein.

21. On or about April 9, 2014, Dermaktive and T1 entered into the Agreement. As part of the agreement, T1 provided credit card processing services for Dermaktive for an agreed term of 36 months. In exchange, T1 received specified fees. Dermaktive also agreed to pay the ETF if the Agreement was terminated prior to the 36-month term on account of excessive chargebacks.

22. Dermaktive violated and breached the terms of the Agreement when it allowed its chargebacks to substantially exceed those allowed under the Agreement. As a result, T1 terminated the Agreement.

23. T1 has performed all of its obligations required under the Agreement excepting only those obligations that were excused by Dermaktive's prior breach of the Agreement.

24. Pursuant to the terms of the Agreement, T1 was allowed to charge Dermaktive the EFT for its violation and early termination of the Agreement.

25. Dermaktive further breached the Agreement by failing to pay the entire ETF.

26. Plaintiff is the assignee of all of T1's rights and interests under the Agreement to the ETF.

27. As a direct and proximate result of Dermaktive's breach of the Agreement, APPS has suffered damages in the amount of at least $530,937.26.

28. Paragraph 3.06 of the Agreement expressly provides for the recovery of attorneys' fees and costs in any action brought to recover money from Dermaktive for its failure to pay money due. It has been necessary for APPS to retain legal counsel to prosecute this action. Pursuant to the Agreement, APPS is entitled to recover its attorney's fees and costs reasonably incurred in prosecuting this action.

## SECOND CAUSE OF ACTION

**(Breach of Guaranty against Defendant Dufner)**

29. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 28 as though set forth fully herein.

30. On or about April 9, 2014, Dufner personally guaranteed the obligations of Dermaktive under the Agreement, including payment of the ETF.

31. Plaintiff is the assignee of all of T1's rights under the Agreement to the payment of the ETF.

32. Dufner breached the Guaranty by failing to pay the balance of the ETF that Dermaktive failed to pay.

33. As a direct and proximate result of Dufner's breach of the Agreement, APPS has suffered damages in the amount of at least $530,937.26.

34. The Agreement expressly provides for the recovery of attorneys' fees and costs in any action arising out of the Guaranty. It has been necessary for APPS to retain legal counsel to prosecute this action. Pursuant to the Agreement, APPS is entitled to recover its attorney's fees and costs reasonably incurred in prosecuting this action.

### THIRD CAUSE OF ACTION

**(Declaratory Relief against All Defendants)**

35. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 28 as though set forth fully herein.

36. Under the Agreement, Dermaktive agreed to pay specified fees and accept liability for chargebacks.

37. An actual controversy has arisen between the parties in relation to the amount of fees and chargebacks that Dermaktive is liable for. Dermaktive contends that it was charged $119,199.01 in chargebacks and fees on ACH transactions that were not warranted under the Agreement. APPS contends that the charges were proper under the Agreement.

38. Plaintiff seeks a determination that Dermaktive is liable for all chargebacks and fees as properly charged under the Agreement and that the amount of $119,199.01 was correctly charged to Dermaktive.

### DEMAND FOR JURY TRIAL

Defendant hereby demands a jury trial as to all causes of actions for which he has a right to trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, APPS prays for judgment on its complaint against Dermaktive and

6

Dufner as follows:

    1.    For general damages in the amount of $530,937.26;

    2.    For a determination that Dermaktive is liable for all chargebacks and fees as properly charged under the Agreement and that the amount of $119,199.01 was correctly charged to Dermaktive;

    3.    For reasonable attorneys' fees and costs of suit incurred herein;

    4.    For pre-judgment and post-judgment interest on the amount recovered at the highest legal rate from the earliest legal date; and

    5.    For such other and further relief as the Court may deem just and proper.

DATED: April 4, 2016

HUTCHISON & STEFEN, LLC

By: _____
Joseph Kistler (3458)
*jkistler@hutchlegal.com*
Todd W. Prall (9154)
*tprall@hutchlegal.com*
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

JULANDER, BROWN & BOLLARD
Dirk O. Julander, Bar No. 132313
*doj@jbblaw.com*
(Pro Hac Vice Application Pending)
9110 Irvine Center Drive
Irvine, California 92618

*Attorneys for Plaintiff, Atlantic-Pacific Processing Systems, Inc.*